## HILL v. BATEMAN.

DEEDS—NOTICE—BONA FIDE PURCHASER.

 Land was deeded to complainant in payment of a debt by one who had forged the certificate of record on the deed, and who had no other title than a contract of purchase, which he had previously assigned to a creditor. The grantor was arrested, and committed suicide, leaving a letter directing payment of part of the proceeds of his insurance to such assignee on condition that he deed the land to complainant. The assignee received the money, but executed a quitclaim deed to one who had been intrusted with the money and with the duty of procuring the deed for complainant, and such grantee conveyed to defendant. Defendant was an intimate friend and a creditor of deceased, and had become bail after his arrest, and admitted that he knew of the letter. *Held*, that defendant had notice of complainant's claim.

Appeal from Kent; Grove, J. Submitted February 10, 1897. Decided March 23, 1897.

Bill by Esther Hill against Eugene Bateman and others to set aside certain deeds, and to procure the execution of a new deed to complainant. From a decree dismissing the bill, complainant appeals. Reversed.

*C. O. Smedley* (*Benn M. Corwin*, of counsel), for complainant.

*Fletcher & Wanty*, for defendants.

HOOKER, J. Esther Hill, the complainant, filed the bill in this case to compel the defendant William Winegar to convey to her a city lot, and to declare two deeds given to Eugene Bateman and Frank P. Smith, respectively, void. Charles Bateman held a land contract for the lot, given him upon an agreement to purchase, from Reynolds & Franklin. Bateman assigned this contract to Winegar,

to secure him for a debt, and Winegar paid the considera-
tion, and took a deed from Reynolds & Franklin, know-
ing, when he took the deed, of the complainant's claim.
Complainant was housekeeper for Bateman, and he gave
her a deed of the premises, duly signed and witnessed, the
acknowledgment and certificate of record being forged.
She testifies that this was in part payment of a debt, and
we so find the fact. Some months afterwards, she learned
that this deed was a forgery, and that Bateman's only
title was a land contract, and that this had been assigned
to Winegar, and that Winegar was about to take a deed.
This resulted in Bateman's arrest, which was soon fol-
lowed by his suicide. He left no will, but left a letter to
his sister Mary Bateman, a resident of Iowa. Of this
letter the following is a copy:

"BATESVILLE, ARK., Oct. 2d, 1893.
"To My Dear Sister, Mary E. Bateman, Cresco, Iowa:
I wrote you on this date that I had made you a bene-
ficiary in my Life Ins. Pol. to the Amt. of $2,000, Royal
Arcanum order, trusting to your devotion and faithful-
ness to disburse the same as I may instruct you, which is
as follows, viz.: $200 for funeral expenses, &c.; $400 for
yourself and my dear mother; $350 to my beloved wife,
Ida M. Bateman, Batesville, Ark.; $200 to B. Mesman,
H. N. Dosker, Agt., on condition of his deeding to Mrs.
Esther Hill lot 29 Orchard Hill Add. to city Grand Rap-
ids, Mich.; $285 to Wm. Winegar, on his deeding to Mrs.
Esther Hill lot No. 20 of Reynolds & Franklin's 3d Add.
to city of Grand Rapids, Mich., and said Winegar to re-
lease all claim to furniture and all obligation against me;
$450 to F. P. Smith, 615 Mich. Trust Buldg., Grand
Rapids, Mich.; $115 Bal. as the necessities of my chil-
dren, Arthur E. & Grace E., may require from time to
time, and such other incidentals as might arise. Now, I
trust, my dear sister, that this will be treated as a sacred
request from an affectionate brother. I would advise you
to correspond with either F. P. Smith or William Wine-
gar, who will gladly aid you in fulfilling the requirements
of this obligation. They are both gentlemen in whom
you can trust fully. God will bless and aid you in carry-
ing out this, the last request of an affectionate brother.
"CHARLES BATEMAN."

It would seem that Mary Bateman received the money on the life policy, for she sent her brother Eugene Bateman to Grand Rapids to adjust the matters in accordance with the wishes of Charles Bateman. Eugene paid Winegar as directed, but, instead of having lot 20 deeded to Esther Hill, he took a deed to himself, and sold the property to defendant Smith for $175, the deed reciting a consideration of $400 or $475.

Under this state of facts, about the only question in the case is the *bona fides* of Smith's purchase. Winegar undoubtedly had the right to pay up the contract, and take a deed, to preserve his security. The deed to Mrs. Hill was an assignment of Bateman's right to redeem. On payment by her, Winegar would have been under obligations to deed to her. He gave a quitclaim deed to Eugene Bateman, knowing that she had such right, possibly because it was necessary to induce Bateman to pay. But Bateman assuredly had no right to sell the property to Smith. He was in duty bound to do as instructed, viz., take a deed to Esther Hill, and, having received a deed to himself, he should have conveyed to her. But he took no better title than Winegar had, and he could sell Smith nothing more, as his deed was a quitclaim. So, at the most, Smith held a deed as security for the debt due to Winegar; and, if the question were raised, it is extremely doubtful if he could claim to be a *bona fide* purchaser in the law—*First*, because there is nothing to show that the Winegar claim was negotiable; *second*, it was probably overdue, and had actually been paid by Eugene. But we find it unnecessary to rest the case upon this ground. The evidence satisfies us that Mr. Smith was fully aware of complainant's claim, and we discredit the pretense that he was ignorant of the directions to Mary Bateman, and what Eugene did in the matter. He was the intimate friend and creditor of Charles Bateman. He signed his bail bond. He admits that he knew of the letter to Mary Bateman, for he says that he was interested in ascertaining whether his claim was

provided for or not, and he admits that he talked with the coroner about it. In short, we find enough in his own testimony, to say nothing of the complainant's, to dispose of his statement that he purchased in ignorance of her claim.

We are of the opinion that the decree of the circuit court should be reversed, and a decree entered in accordance with the prayer of the bill, with costs of both courts; and, further, that, if occasion requires, said decree may be entitled to record as evidence of complainant's title to the premises. Ordered accordingly.

The other Justices concurred.